UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MARK A. ANDERSON                                          PLAINTIFF

VS.                        CIVIL ACTION NO. 3:10CV617TSL-MTP

CITY OF MCCOMB, MISSISSIPPI,
AND GREGORY MARTIN                                        DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
City of McComb and Gregory Martin for summary judgment pursuant to
Rule 56 of the Federal Rules of Civil Procedure; on plaintiff Mark
Anderson's motion for (partial) summary judgment; and on
defendants' motion to strike expert testimony of B. D'Andra Orey.
The court has considered the memoranda of authorities, together
with attachments, submitted by the parties, and for reasons which
follow, concludes that defendants' motion for summary judgment
should be granted; that plaintiff's motion for summary judgment
should be denied; and that defendants' motion to strike should be
granted.

Plaintiff Mark Anderson, a (former) police officer with the
City of McComb Police Department filed the present action against
the City of McComb and McComb Police Chief Gregory Martin[1]

---

[1]     Plaintiff's complaint does not indicate whether he
intended to sue Chief Martin only in his official capacity as
chief of police, which is the functional equivalent of a suit
against the City itself, see Kentucky v. Graham, 473 U.S. 159,
165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), or whether he
also intended to sue Chief Martin in his individual capacity.  In

asserting claims under 42 U.S.C. § 1983 for alleged violation of

the Fifth/Fourteenth Amendment Due Process and Taking Clauses and

of his Fourth/Fourteenth Amendment right to be free from

unreasonable seizure, and under state law for false arrest, abuse

of process and malicious prosecution, stemming from a series of

events surrounding his employment which culminated in his arrest

for taking a police vehicle without authorization (joyriding) and

impersonating a police officer.  The facts underlying these claims

are largely undisputed.

    At the time of the incidents at issue, Anderson had been

employed by the City of McComb Police Department for well over

twenty years, and in 2008 and 2009, had served intermittently as

interim chief of police.  In December 2008, after Mayor Zachary

Patterson suspended Police Chief Gregory Martin following a

_____

their summary judgment motion, defendants take the position that
he has been sued solely in his official capacity, but in an
abundance of caution, Chief Martin has sought summary judgment on
the basis of qualified immunity as to any potential individual
capacity claim plaintiff may have intended.  Plaintiff's response
does not indicate whether he meant to assert an individual
capacity claim against Chief Martin, and he does not even
acknowledge much less respond to the qualified immunity argument.
In the court's opinion, it is fair to infer from plaintiff's lack
of response on this issue that he did not intend to sue Chief
Martin individually.  However, even if he did, as should be clear
from the court's discussion of the evidence, Chief Martin would be
entitled to qualified immunity.  See Jacobs v. W. Feliciana
Sheriff's Dep't, 228 F.3d 388, 393 (5th Cir. 2000) (to overcome
qualified immunity, plaintiff must establish violation of a
clearly established constitutional right; and that "the
defendant's conduct was objectively unreasonable in light of the
clearly established law at the time of the incident") (citation
omitted).

disagreement, Mayor Patterson named Anderson as interim chief of police.  Anderson was thereafter removed as interim police chief when the City of McComb Board of Mayor and Selectmen (Board) reinstated Martin in February 2009.  Anderson was again named interim chief in May 2009, after Mayor Patterson suspended Martin a second time; but Anderson was removed as interim chief in June 2009, when the Board again reinstated Martin to acting chief, which prompted a grievance by Anderson against the Board and Chief Martin for allegedly conspiring to "harass, retaliate against, threat[en], not promote nor hire anyone who is believed to be a mayor's recommendation...."  The mayor thereafter terminated Chief Martin's employment, leading to a lawsuit in state court, which ended with the court's ruling on August 14, 2009 that Mayor Patterson had no authority to terminate City employees.

On August 27, 2009, after Martin advised Anderson he was to report to work the weekend of August 28 through 30, Anderson met with Lahoma Isaac in the City's human resources department to check on his accumulated leave time and to discuss retirement.  According to Anderson, he told Isaac he was "considering retirement," and the two contacted the Public Employees Retirement System to ascertain his accrued leave time and determine his eligibility for retirement benefits.  After the call, Anderson told Isaac he was "going to start using [his] leave and retire."

Following this meeting, Isaac informed City Administrator Quordiniah Lockley that Anderson was retiring from the City of McComb and that August 27 would be his last day; Lockley in turn contacted Chief Martin and informed him that Anderson had retired and would not report to work for his shift the following morning. In addition, Lockley directed Isaac to memorialize her conversation with Anderson in a memo to the file, which she did. Isaac drafted a memo to Lockley, dated September 2, 2009, which stated:

> On Thursday, August 27, 2009, Mark Anderson came into my office and confirmed to me that today is the day he will be retiring from the City of McComb Police Department and will be the last day he will work plus to inform me he is schedule to work for 5:30 am the next morning and will not be reporting for work.

Following his conversation with Isaac on August 27, Anderson contacted Mayor Patterson and told the mayor he was "contemplating retirement." The mayor encouraged Anderson to reconsider his decision, and suggested that Anderson "take the leave, give it some time, and just let [Mayor Patterson] know [his] decision." According to Anderson, he took the mayor's advice, and after further thought, decided against retirement and informed the mayor of his decision. However, he did not communicate this decision to Chief Martin, Administrator Lockley or Isaac. Instead, at the City Board's September 8, 2009 meeting, Mayor Patterson announced to the Board that Anderson had second thoughts about leaving the

force and had decided to "withdraw his intent to retire," – "to 'unretire' if you will" – and that he would be "coming back to the force" on September 16, 2009.[2]

The following day, Anderson approached Chief Martin and presented a leave form seeking approval for a period of leave from August 28 to September 13, 2009. Chief Martin refused to sign the form and directed Anderson to Administrator Lockley, who also refused to sign the form.[3] Lockley took the position that Anderson, having voluntarily separated from employment with the City, was required to follow civil service procedures for reinstatement if he wanted to "unretire," and these procedures required that he be reinstated and recertified by the Board or Civil Service Commission.[4] At a September 14 work session of the

---

[2] Mayor Patterson stated:
I am informed by Lt Mark Anderson, who is a senior lieutenant in the force, that he has decided to withdraw his intent to retire and plans to take the time that he has taken at this time off. He plans to take that as official leave time. He has had second thoughts about leaving the force. Considering that we are short officers in the force, I applaud that decision. Lt. Mark Anderson has decided to "unretire" if you will and return to the force. So we want to keep that in mind that Lt. Anderson is coming back to the force.

[3] Martin testified that he refused to sign the form because he had no knowledge of Anderson's being on leave. Lockley stated he refused to sign it because Anderson, to his knowledge, was no longer an employee.

[4] Rule 9 of the Civil Service Rules, states:

1.1 Any person who has held a regular position under

5

Board, attended by Anderson,[5] Lockley advised the Board that in view of Anderson's voluntary separation, Board action would be required to effect Anderson's reinstatement. Lockley was thus directed to place the issue of Anderson's reinstatement on the agenda for the Board's September 22, meeting. According to Lockley, he "made clear at that work session, which [Anderson] attended, that [Anderson] was not an employee of the City."

Notwithstanding this, Anderson reported for duty on the morning of September 16, 2009 at his normal time, 5:30 a.m. Although he discovered that his employee access code had been disabled, he was able to enter as officers on the previous shift were leaving. After participating in roll call, he retrieved keys to a police vehicle and left on patrol. When Chief Martin subsequently arrived at work around 8:00 a.m. and was notified that Anderson had reported for duty and was driving around the

---

Civil Service and who has been separated from the service through resignation, reduction in force, or leave of absence without pay, and through no delinquency or misconduct on his part who returns to work within 24 months, may be reinstated after a character investigation with satisfactory results, without examination to a vacancy in a similar position. However, applicants who previously had voluntarily resigned from the City employ and are reinstated must be re-certified by the Commission and required to serve the probationary period.

[5]    Although Anderson testified he could not recall the work session, Lockley testified affirmatively that Anderson was in attendance.

city in a police patrol vehicle, he instructed the dispatcher to broadcast over the radio that an "unauthorized employee had a vehicle" and needed to return the car to the police department. Chief Martin also directed the other officers on duty that should they encounter Anderson while on patrol, they were to instruct him to return the unit to the police department. One of these officers, Gill, did encounter Anderson while on patrol at approximately 8:35 a.m., and told Anderson that he was to return his patrol car to the police department. Anderson told the officer, "Message delivered," and "You're dismissed." Yet Anderson, who had also heard the radio dispatch and knew that it was directed at him, did not return to the police department, or attempt to contact Chief Martin, his supervisor.[6] Instead, he contacted the mayor, who told him to "go on with police duties and notify [his] attorney."

Once it became apparent that Anderson was not going to voluntarily return the patrol car to the police department, Chief Martin contacted Administrator Lockley for direction. Lockley, in turn, contacted City Attorney Wayne Dowdy, who suggested they contact the District Attorney, Dee Bates, for assistance. Martin and Lockley met with the district attorney and explained the

---

[6] Although Anderson agreed that Officer Gill told him he was to return the vehicle to the station, he testified Gill did not tell him the message was from Chief Martin. Gill testified otherwise. But ultimately, Anderson agreed he knew the directive must have come from Chief Martin.

7

situation, that Anderson was no longer a City employee, having
retired effective August 27, and that he was in uniform and in
possession of a City patrol vehicle which he had failed to return,
despite being directed to do so.  After extended discussion, they
settled on a course of action.  District Attorney Bates assisted
Chief Martin in preparing affidavits against Anderson for
violation of Miss. Code Ann. § 97-17-61 (making it a crime to take
away "without the consent of the owner or his agent, ... any ...
automobile, truck or other motor vehicle, where such taking and
carrying away shall not amount to larceny"), and of Miss. Code
Ann. § 97-7-44 (making it a crime to "falsely and willfully
assume[] or pretend[] to be an officer or employee acting under
the authority of ... any ... municipality or any other subdivision
of the State of Mississippi").  The affidavits were presented to
Municipal Judge Danny Smith, who issued a warrant for Anderson's
arrest, and when Anderson returned to the police department around
5:15 p.m., he was arrested on the charges.

A trial on the merits of the charges was held on November 10,
2009, at the conclusion of which the judge expressed he thought
Anderson was "wrong in doing what [he] did that day," but chose to
remand the charges to the file so as to not mar Anderson's
record.[7]

---

[7]     The judge found it apparent that "there has been a big
political struggle here in the City of McComb," and expressed that
he thought Anderson "got caught up in something that [he]
shouldn't have got caught up in."  Addressing Anderson, the judge

Plaintiff filed the present action on October 26, 2010, asserting federal claims for unlawful arrest, for violation of the due process and takings clauses of the U.S. Constitution, and and state law claims for false arrest, false imprisonment, malicious prosecution and abuse of process. Defendants have moved for summary judgment on each of these claims and plaintiff has filed his own motion for summary judgment on his claims for the alleged deprivation of his property interest in his employment and employment benefits.

### Section 1983 False Arrest Claim

To prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment. Brown v. Lyford, 243 F.3d 185, 189 (5th

---

said,

> I think a couple of people have swayed you to do what has been done, but I think you did wrong the day you were asked to bring that car back and you did not do it. You were completely wrong in disobeying your superior officers which is wrong. ... I think you were wrong in doing what you did that day, but I think you got caught up in something that you shouldn't have got caught up in.
>
> I think it would have been a lot better on you if you would have brought that car back and sit down and find out what the status of your employment was that day. ...
>
> I certainly don't want anything like this to blemish a person's record after giving 25 years to serve the citizens of McComb. So, therefore, the court is going to remand these charges to the file. Again, I don't want this to go on your record, but I want to restate that you were wrong that day that you did not bring the car back....

Cir. 2001)(citations omitted).  The Fifth Circuit has held that

"[w]here an arrest is made under authority of a properly issued

warrant, the arrest is simply not a false arrest."  Smith v.

Gonzales, 670 F.2d 522, 526 (5th Cir. 1982).  Elaborating on the

principle, the court has written:

> "It is well settled that if facts supporting an arrest
> are placed before an independent intermediary such as a
> magistrate or grand jury, the intermediary's decision
> breaks the chain of causation for false arrest,
> insulating the initiating party."  Taylor v. Gregg, 36
> F.3d 453, 456 (5th Cir. 1994); see also Murray v. Earle,
> 405 F.3d 278 (5th Cir. 2005)("[W]hen a neutral
> intermediary, such as a justice of the peace, reviews
> the facts and allows a case to go forward, such an act
> 'breaks the chain of causation.'" (quoting Hand v. Gary,
> 838 F.2d 1420, 1428 (5th Cir. 1988))).  Despite review
> by an independent intermediary, the initiating party may
> be liable for false arrest if the plaintiff shows that
> "the deliberations of that intermediary were in some way
> tainted by the actions of the defendant."  Hand, 838
> F.2d at 1428.

Deville v. Marcantel, 567 F.3d 156, 170 (5th Cir. 2009).  See also

Shine v. Mars, No. 11-41071, 2012 WL 360519, 1 (5th Cir. Feb. 2,

2012) (finding of probable cause inherent in issuance of warrant

insulates officer from any claim for false arrest "unless he made

false statement in his affidavit which was used to obtain the

warrant").  In the case at bar, Anderson's arrest was effected

pursuant to a facially valid warrant.  Therefore, he cannot avoid

summary judgment unless he demonstrates that a genuine issue of

material fact exists as to whether defendants "knowingly provided

false information to secure the arrest warrants or gave false

information in reckless disregard of the truth." <u>Freeman v. County of Bexar</u>, 210 F.3d 550, 553 (5th Cir. 2000) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)).

The affidavit submitted by Chief Martin to obtain the warrant for an alleged violation of Miss. Code Ann. § 97-16-61, recited that Anderson

> did willfully and unlawful [sic] take, without the consent of City of McComb, MS, a motor vehicle described as a McComb City police vehicle, Unit 190, and is not an employee of the McComb City Police Department, by obtaining keys.

The affidavit for impersonation of a municipal officer, in violation of Miss. Code Ann. § 97-7-44, recited that Anderson

> falsely and willfully pretended to be a police officer. Mr. Mark Anderson arrived at the McComb Police Department dressed in a uniform, retrieved a marked unit and left the parking area without the authority of the chief of Police of the City of McComb. Mr. Anderson is an ex-employee of the McComb Police Department....

In his response to the motion, Anderson declares that "the warrant issued for Plaintiff's arrest was invalid" because Chief Martin knew, or reasonably should have known that Anderson was an employee of the City and was not impersonating a police officer and was not joyriding. Plaintiff notes that there are only three ways to separate from City employment: resignation, retirement and termination. He insists that he never resigned or retired, and was never terminated from employment, and that he was

consequently a City employee at the time Martin executed the
warrants. He states he never resigned, as he never submitted a
written resignation, as required by City policy,[8] and he notes
that neither he nor anyone with the City ever used the word
"resign" or "resignation" in any communication, written or oral,
prior to September 16. Plaintiff further maintains that he never
retired, as evidenced by the fact that he never submitted an
application for retirement or completed any of the documentation
for retirement. He claims, in fact, that he never even told Isaac
that he intended to retire, effective August 27 or any other date.
Instead, he told her only that he was "considering retirement" and
planned to use his accumulated leave while he considered
retirement, which leave could be applied "toward retirement."[9] He

---

[8]     In fact, plaintiff has pointed to no evidence of a City
policy requiring that a resignation be in writing. Defendants, on
the other hand, have provided a City policy manual which states,
with respect to resignation, that a resignation may be accepted
"at any time," and does not prescribe any particular form in which
a resignation must be presented. The court notes, as well, that
City Attorney Dowdy testified at Anderson's criminal trial that on
the same day Anderson purportedly announced "he was resigning and
retiring and would not be coming back the next day," someone from
City Hall, most likely Administrator Lockley, called him as City
Attorney to ask whether it had to be in writing, to which Mr.
Dowdy responded, "No".

[9]     The court notes that plaintiff's position as to what he
told Isaac has been rather vague and somewhat inconsistent. On
the one hand, he has testified he told her only that he was
"considering retirement," but at the same time, he also has
testified he told her he was going to start "using his leave and
retire," which suggests he expressed that he had made a decision
to retire.

contends, finally, that he was never given notice of any alleged termination. Plaintiff concludes, therefore, that at all times prior to September 16, 2009, he remained a City employee, on leave with pay, and that Chief Martin's contrary representation in the affidavit for the warrant was thus knowingly false or in reckless disregard of the truth.

In the court's opinion, however, even assuming for the sake of argument that plaintiff had not effectively resigned or retired from the police force as of August 27, 2009, the evidence does not suggest that Chief Martin knew, or had reason to know that he was still a City employee.

The only individuals who know what Anderson actually told Isaac in the August 27 meeting are Anderson and Isaac, and both recall that conversation differently. For purposes of the present motion, the court will accept Anderson's testimony that he told her he was "considering retirement." But regardless of what he told her, or what she may have understood from their conversation, there is no dispute that Isaac related to Lockley, verbally and in her September 2 memo, that Anderson told her on August 27 that "today is the day he will be retiring from the City of McComb Police Department and will be the last day he will work." This, was, in turn, related by Lockley to Chief Martin. Anderson did not report for work as scheduled on the succeeding three days (March 28, 29 and 30), nor did he report for work on the days he

would normally have been scheduled to work the following week, all of which would have tended to confirm what they had been told by Isaac:  that Anderson "is retiring" effective today, and "today is the last day he will work."  Indeed, consistent with his understanding that Anderson had voluntarily terminated his employment effective August 27, Chief Martin directed a letter to Anderson on September 4, requesting that he make an appointment "to turn in your property that was assigned to you during your employment with the McComb Police Department as soon as possible."[10]

Defendants acknowledge that Lockley and Chief Martin were both present at the September 8 Board meeting when the mayor announced that Anderson had decided to "unretire" and "return to the force."  However, Lockley, along with City Attorney Dowdy, have both testified that, based on their understanding that Anderson had voluntarily separated from employment with the City, whether by resignation or retirement, then under applicable civil service rules, he could only have resumed employment if he sought and was granted reinstatement by the Civil Service Commission or the Board, which had not occurred as of September 16.[11]  Chief

---

[10]    The court notes that Anderson denies receiving this letter, which had the incorrect zip code.

[11]    As Attorney Dowdy put it in his testimony at Anderson's criminal trial when asked, in effect, why he thought Anderson had resigned when he never used the word "resign," he responded:
    When you read those letters, he says I am leaving work.

Martin also knew at the time he signed the affidavits that Anderson was himself aware of these matters, and that Anderson, in complete disregard of the City's position that he was not then an employee of the police department, purported to report for work, in uniform, and went out on patrol in a police vehicle, which he blatantly failed to return in the face of Chief Martin's directives that he do so.  Confronted with these undisputed facts, plaintiff has offered nothing of substance to indicate that Chief Martin "knowingly provided false information to secure the arrest warrants or gave false information in reckless disregard of the truth."  Bexar, 210 F.3d at 553.  Accordingly, plaintiff § 1983 claim for arrest in violation of the Fourth Amendment fails as a matter of law.[12]

---

> I am vacating my office.  I am quitting.  I am
> withdrawing.  I won't be back for work tomorrow, and he
> didn't come back.

He further testified that at the September 8 Board meeting when the mayor announced Anderson's plans to return, he pointed out to Lockley that Anderson could not return to employment unless he first sought and was granted reinstatement by the Civil Service Commission or City Board.

[12]    The City has also argued, alternatively, that even if he could establish a constitutional deprivation, plaintiff could not prevail on his § 1983 false arrest claim against the City or Chief Martin in his official capacity, as he cannot establish a municipal policy on which to base liability.  A municipality may be held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.  Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  While the court need not reach this issue since it concludes that plaintiff cannot establish a constitutional violation, the court does note that

<u>Section 1983: Due Process and Takings Claims</u>

The parties have filed cross-motions for summary judgment on plaintiff's due process and takings claims. The Fourteenth Amendment forbids states from depriving an individual of life, liberty or property without due process. Standard analysis under the Due Process Clause proceeds in two steps: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." <u>Swarthout v. Cooke</u>, – U.S. –, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) (citing <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

---

since Martin, as the chief of police, is "the relevant policymaker with final decision making authority as it concerns municipal policy" in matters of law enforcement for the City, his actions constitute City policy. <u>See Taylor v. Town of DeKalb, Miss.</u>, Civ. Action No. 4:06CV124TSL-LRA, 2009 WL 1748523, 4 (S.D. Miss. June 19, 2009) (under Mississippi law, chief of police is final policymaker vis-a-vis law enforcement) (citing <u>Bishop v. McCollum</u>, Civ. Action No. 1:93CV23BD, 1994 WL 1890218, 2 (N.D. Miss. Sept. 27, 1994), in turn citing Miss. Code Ann. § 21-21-1, which provides, in relevant part, "The marshal or chief of police shall be the chief law enforcement officer of the municipality and shall have control and supervision of all police officers employed by said municipality."); <u>see</u> <u>also</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S. Ct. 1292, 1299 (1986)(decision to adopt particular course of action intentionally made by authorized policymaker "surely represents an act of official government 'policy'" for which the municipality is responsible).

Defendants acknowledge that as a full-time employee of the police department, Anderson was covered by the civil service system established by Mississippi Code Annotated §§ 21-31-1 through 21-31-27, which provide that any person in the classified civil service who has been permanently appointed or inducted into civil service shall not be removed, suspended, demoted, or discharged, except for cause. Defendants thus further acknowledge that Anderson had a protected property interest in continued employment, and that therefore, he would have been entitled to notice and an opportunity to be heard in the event of his discharge from employment. See Nichols v. City of Jackson, 848 F. Supp. 718, 721 (S.D. Miss. 1994) (plaintiff fireman's property interest in his employment was created by Miss. Code Ann. § 21-31-21 and § 21-31-23 (1972), which provide that civil service employees cannot be discharged except for cause); Bowie v. City of Jackson Police Dept., 816 So. 2d 1012, 1015 (Miss. Ct. App. 2002) ("the right of continued employment of a policeman is set out in Mississippi Code Annotated §§ 21-31-21 and 21-31-23"); see also McNeill v. City of Canton, Civil Action No. 3:06cv74 DPJ-JCS, 2008 WL 249437, 13 (S.D. Miss. Jan. 29, 2008) ("Mississippi Code creates a property interest in the employment of civil service employees") (citing Burleson v. Hancock County Sheriff's Dep't Civil Service Comm'n, 872 So. 2d 43, 49 (Miss. Ct. App. 2003)). However, defendants contend plaintiff cannot make out a viable due

17

process claim since the City did not discharge him from employment, but rather, he voluntarily terminated his own employment.  See Macklin v. City of Brookside, 77 F.3d 477, 1996 WL 46677, 3 (5th Cir. 1996) (employee's "knowing and voluntary resignation makes it impossible for him to allege a viable procedural or substantive due process claim"); Rathjen v. Litchfield, 878 F.2d 836, 839 (5th Cir. 1989) (employees, by voluntarily resigning, lose any due process protections they would otherwise have); see also Cross v. Monett R-I Bd. of Educ., 431 F.3d 606, 611 (8th Cir. 2005) (no due process hearing required where employer refused to accept employee's attempt to rescind notice of retirement voluntarily submitted).  They maintain that the fact that he subsequently changed his mind and attempted to return to his former position with the police department does not change the fact that it was plaintiff's decision to leave his employment and that he was never discharged from employment.

In his complaint, plaintiff specifically alleges he "was never terminated from his employment with the City of McComb Police Department at any point."  He goes on to allege, though, that "although he has never been officially terminated, the Defendants have refused to allow Mr. Anderson to resume his

position and/or to credit him with the unused leave time (vacation days, sick days, etc.) that he had accumulated over his tenure."[13] He concludes, "The refusal to pay Plaintiff his salary and earned leave as well as the refusal to give Plaintiff a civil service hearing amount to the deprivation of property in violation of the Fifth and Fourteenth Amendments."

In the court's opinion, as he was not removed or discharged, plaintiff was not entitled to notice or the civil service hearing required of the City in connection with a discharge. Plaintiff has not suggested any other basis on which he may have been entitled to a due process hearing.[14] To the extent that plaintiff may contend defendants violated his due process rights by refusing to reinstate him to his former position, his claim fails as he has not identified any basis for finding a property interest in reinstatement. While a civil service employee has a property interest in *continued* employment, the applicable civil service rules provide that an employee who has "been separated from the

_____

[13] While it is clear from the parties' submissions that Anderson was never reinstated and did not otherwise resume employment with the City, neither party has directed the court to evidence of what transpired with respect to plaintiff's employment status in the wake of his arrest.

[14] The court additionally notes that with respect to this claim, plaintiff has not identified any policy of the City which allegedly resulted in the alleged violation of his due process rights. See Spiller v. City of Texas City, 130 F.3d 162, 167 (5th Cir. 1997) (plaintiff has burden to identify municipal policy or custom which resulted in his constitutional injury).

service through resignation, reduction in force, or leave of absence without pay, and through no delinquency or misconduct on his part, ... *may be reinstated* after a character investigation with satisfactory results, without examination to a vacancy in a similar position." (Emphasis added). As the rule uses the permissive "may" rather than the mandatory "shall," it confers no entitlement to reinstatement and thus no property interest. <u>See Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972) (to enjoy a property interest in employment, an employee must have "a legitimate claim of entitlement," created and defined by "existing rules or understandings that stem from an independent source such as state law"); <u>see also</u> <u>Wallace v. City and County of San Francisco</u>, 51 F.3d 284, 1995 WL 138610 (Table) (9th Cir. 1995) (holding that rule regarding reappointment which used permissive "may" rather than mandatory "shall", was completely bereft of any restrictions, procedural or substantive, dictating circumstances in which appointing officer should grant approval and imposed no particular criteria or standards, established eligibility for reappointment, not entitlement to reappointment).

In addition to his claim that he was denied a civil service hearing, plaintiff asserts a due process claim and takings claim based on allegations he was deprived of his salary and unused leave time. However, he has neither alleged nor proven any basis

for finding either that he had a property interest in any such benefits or that he was deprived of any such property interest as the result of any policy of the City. Accordingly, the court concludes that defendants, and not plaintiff, are entitled to summary judgment on this claim.[15]

State Law Claims:

The City submits that plaintiff's state law claims for false arrest and imprisonment, abuse of process and malicious prosecution are precluded by the Mississippi Tort Claims Act (MTCA), Miss. Code. Ann. § 11-46-1 *et seq.*[16] The MTCA provides the exclusive civil remedy against a governmental entity and its employees. See Miss. Code Ann. § 11-46-7(1). A governmental

---

[15] Plaintiff offers no substantive support for his own motion or for his response to defendants' motion on his due process and takings claims. Plaintiff alleges only that defendants intentionally violated his due process rights by their "malicious and wanton disregard of [his] due process rights," that "[d]efendants' conduct, as shown by the sworn testimony of its agents and the pleadings set forth in this case, evidence the specific intent to violate the Plaintiff's civil rights and a reckless disregard of the probability of causing that violation," and that "[t]he evidence, documents, sworn testimony and pleadings in this matter show that the acts and omissions of the Defendants were intentional."

[16] Plaintiff's only response to defendants' motion as it pertains to his state law claims consists solely of a declaration that defendants' position that plaintiff was engaged in criminal activity at the time of his arrest and detention is belied by the transcript of his criminal trial, which shows that the case against him was remanded. Plaintiff does not address defendants' further contention that he cannot demonstrate that defendants acted in reckless disregard of his safety and well-being.

entity includes the State and its political subdivisions, which includes "any ... municipality." Id. § 11-46-1(i).  Any claim against an employee of a governmental entity for acts arising out of his or her employment must be brought pursuant to the MTCA. Id. § 11-46-7.  See also Kimball Glassco Residential Center, Inc. v. Shanks, 64 So. 3d 941, 944-945 (Miss. 2011) (explaining applicability of MTCA).  The MTCA provides immunity for police and fire protection employees acting within the scope and course of their duties, and in particular, provides that a governmental entity and its employees are exempt from liability for any incident

> arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety or well-being of any person not engaged in criminal activity at the time of injury.

Defendants correctly contend in their motion that plaintiff cannot prevail on his claims because he cannot sustain his burden to prove that defendants acted in reckless disregard of his safety and well-being in causing his arrest and prosecution.[17]  The Mississippi Supreme Court has defined "reckless disregard" in this context as "a higher standard than gross negligence and that it

---

[17]    Defendants submit first that plaintiff cannot prevail because he cannot prove by a preponderance of the evidence that he was not engaged in criminal activity at the time of his arrest and detention.  The court finds it unnecessary to address this issue, as it is clear that the requisite reckless disregard is lacking.

involves willful or wanton conduct which requires knowingly or intentionally doing a thing or wrongful act." <u>City of Jackson v. Gray</u>, 72 So. 3d 491, 496 (Miss. 2011) (citing <u>Davis v. City of Clarksdale</u>, 18 So. 3d 246, 249 (Miss. 2009)); <u>see</u> <u>also</u> <u>Burkes v. Waggoner</u>, Civ. Action No. 3:06cv142HTW-LRA, 2008 WL 695254, 6 (S.D. Miss. Mar. 12, 2008) (reckless disregard has been defined as "conscious indifference to consequences, amounting almost to a willingness that harm should follow.") (citations omitted). Plaintiff bears the burden of proof of reckless disregard by a preponderance of the evidence. <u>Burkes</u>, 2008 WL 695254, at 6. As defendants note, they proceeded with affidavits for an arrest warrant only after plaintiff failed to return the police vehicle following repeated requests that he do so, and only after consultation with City Attorney Dowdy and District Attorney Bates. Judge Danny Smith determined that probable cause existed for plaintiff's arrest based on the facts presented, and as the court concluded *supra*, plaintiff has not shown that defendants intentionally or recklessly withheld or misrepresented facts to the judge in seeking the warrant. Accordingly, defendants fall within the exemption of § 11-46-9(1)(c), and plaintiff's state law claims will be dismissed.

        <u>Motion to Strike Plaintiff's Expert B. D'Andra Orey</u>

        Defendants have separately moved to strike the expert testimony of Byron D'Andra Orey. Based on his expert report and

his affidavit submitted in response to defendants' motion, Dr.
Orey proposes to offer his "expert" opinion that Anderson never
retired or resigned from his employment with the City, and that he
was never terminated.[18]  He further states that in his "expert"
opinion, when Gregory Martin executed the warrant against
Anderson, he actually knew or should have known Anderson was not
impersonating a police officer and was not joyriding; that the

---

[18]     In his expert report, and in his affidavit, Dr. Orey
opines as follows:
> 2.  Mr. Anderson was never terminated from his
> employment with the City of McComb Police Department.
> Mr. Anderson has never been provided notice or a hearing
> by the Civil Service Commission relative to any alleged
> termination.
>
> 3.  Mr. Anderson never resigned from his employment with
> the City of McComb Police Department.  None of the
> memorandums sent by Gregory Martin or any other City of
> McComb representative prior to September 16, 2006 make
> mention of a resignation by Mr. Anderson or use the word
> "resign" or "resignation" with reference to his
> situation, and a "resignation" in Mr. Anderson's
> situation and in this economy would be contrary to
> common sense, as he would have potentially forfeited
> retirement benefits he had accrued over the prior 20-
> plus years of service.
>
> 4.  Mr. Anderson never retired from his employment with
> the of McComb Police Department.  He never submitted an
> application for retirement of any of the required
> documentation.  During Mr. Anderson's criminal trial,
> Lahoma Isaac testified that the City's policy is for a
> retirement to be in writing, that in order to retire,
> the policy and procedure must be followed, that the
> forms must be completed, and that Mr. Anderson did not
> complete the retirement process, and never tendered a
> resignation and was not retired according to the City's
> and PERS' rules and regulations.

information Gregory Martin provided to obtain a warrant for Anderson's arrest was fraudulent; that Gregory Martin was present at the September 8 Board meeting when the mayor announced Anderson would be returning to work; and that it was unreasonable for Gregory Martin to cause a warrant to be executed for Anderson's arrest under these circumstances.

The Rules of Evidence require that the court ensure that all expert testimony is both relevant and reliable. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Rule 702 provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue," and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. With respect to the determination of relevancy pursuant to Rule 702 and Daubert, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003).

Defendants submit that Dr. Orey is not qualified to testify to the matters set forth in his expert report. They note that Dr. Orey's undeniable expertise in the area of race and politics simply has no bearing on the issues in this case and that his background, training and experience, impressive as it is, simply does not qualify him to offer an expert opinion as to the reasonableness of an arrest warrant or as to whether or not a city employee has actually resigned, retired or been terminated. They further submit that even if Dr. Orey were qualified, his putative "expert" opinions are nothing more than speculation regarding fact issues intended for the jury, and that he offers nothing in the way of specialized or technical knowledge that would be helpful to a jury. Rather, he merely recites facts and adds his subjective beliefs about them, which does not qualify as legitimate "expert" testimony.

Defendants are manifestly correct. Admissibility of expert testimony under Rule 702 depends on whether the opinion "will assist the trier of fact to understand the evidence or to determine a fact in issue." See Salas v. Carpenter, 980 F.3d 299, 305 (5th Cir. 1992) ("In deciding whether an expert's opinion should be admitted, the court should focus on Fed. R. Evid. 702's standard of whether the opinion will assist the trier of fact to understand the evidence or to determine a fact in issue. Stated more directly, the trial judge ought to insist that a proffered

expert bring to the jury more than the lawyers can offer in argument.") (citations omitted). While Dr. Orey is impressively credentialed *in his field*, his qualifications are not in any respect relevant to the specific issues presented in this case. His qualifications do not suggest any expertise in police procedures or civil service personnel matters. In these areas, he is a mere layman. See GWTP Investments, L.P. v. SES Americom, Inc., Civil Action No. 3:04-CV-1383-L, 2007 WL 7630459, 2 (N.D. Tex. Aug. 3, 2007) (holding that "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.") (citing Wilson v. Woods, 163 F.3d 935 (5th Cir. 1999)); see also Tanner v. Westbrook, 174 F.3d 542, 548 (5th Cir. 1999) (stating that issue is whether a particular expert has "sufficient specialized knowledge to assist the jurors in deciding the particular issues ...." (quoting Kumho Tire Co. ., Ltd. v. Carmichael, 526 U.S. 137, 156, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)).

Moreover, it can be said that each opinion Dr. Orey proposes to offer as "expert" opinions either amounts to nothing more than his personal interpretation of the facts or a legal conclusion based on his personal fact finding, neither of which is the proper subject of expert testimony. Rule 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not

objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, this rule "does not open the door to all opinions," and "is not intended to allow witnesses to give legal conclusions or tell the jury what result to reach." Fidelity Nat. Title Ins. Co. v. Doubletree Partners, L.P., Case No. 4:08-CV-00243, 2011 WL 4715174, 7 (E.D. Tex. Oct. 5, 2011) (citing Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)); see also In re FEMA Trailer Formaldehyde Products Liability Litigation, MDL No. 07-1873, 2009 WL 2169224, 3 (E.D. La. July 15, 2009) ("[f]act issues are not beyond the common understanding of the average juror, thus, the jury can handle such issues without expert help"); United States v. Williams, 343 F.3d 423, 435 (5th Cir. 2003) (finding it error under Rule 704(a) to allow an expert's testimony about the reasonableness of a police shooting because "[r]easonableness under the Fourth Amendment or Due Process Clause is a legal conclusion").

For these reasons, the court concludes that Dr. Orey's proposed expert testimony may not properly be admitted, and the court therefore concludes that the affidavit submitted in response to defendants' summary judgment motion must be stricken.

Conclusion

Based on the foregoing, it is ordered that defendants' motion for summary judgment is granted; that defendants' motion to strike

the expert testimony of B. D'Andra Orey is granted; and the motion of plaintiff for summary judgment is denied.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED this 16th day of April, 2012.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE